**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LADONNA C. TIMMONS,** | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 16-00131-N** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
|     **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ladonna C. Timmons has brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*., and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*.   With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73.  (*See* Docs. 17, 19).

Upon consideration of the parties' briefs (Docs. 13, 14) and those portions of the administrative record (Doc. 12) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised,[1] the Court finds that the Commissioner's final decision is due to be **AFFIRMED** under sentence four of § 405(g).

---

[1] With the Court's consent, the parties jointly waived the opportunity for oral argument. (*See* Docs. 16, 18).

# I.   Background

On September 27, 2012, Timmons filed applications for a period of disability, DIB, and SSI with the Social Security Administration ("SSA"),[2] alleging disability beginning May 6, 2012.[3]   After her applications were initially denied, Timmons requested a hearing before an Administrative Law Judge ("ALJ") for the SSA, which was held on March 13, 2014.   On August 22, 2014, the ALJ issued an unfavorable decision on Timmons's applications, finding her "not disabled" under the Social Security Act and thus not entitled to benefits.   (*See* R. 15 – 29).

The Commissioner's decision on Timmons's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied Timmons's request for review of the ALJ's decision on February 1, 2016.   (R. 1 – 5).   On March 29, 2016, Timmons filed this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision.   (Doc. 1).   *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social

---

[2] DIB provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a).   SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.   Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).

[3] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.   42 U.S.C. § 423(a)(1)(A) (2005).   For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.   20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    <u>Standards of Review</u>

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' "  *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).  "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' "  *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as

automatons.  [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]"  *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted).  *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us.  Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").  "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact.  No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims."  *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted).  *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) …  As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)).  This Court "conduct[s] 'an exacting examination' of these factors."  *Miles v. Chater*, 84 F.3d 1397,

1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).  "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260  (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).  *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[4]

The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.  *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another

---

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). If the applicant attacks only the ALJ's decision, the Court may not consider evidence that was presented to the Appeals Council but not to the ALJ. *See id.* at 1324.

### III.   Analysis

At Step One, the ALJ determined that Timmons had not engaged in substantial gainful activity since the alleged disability onset date, May 6, 2012.  (R. 20).  At Step Two, the ALJ determined that Timmons had the following severe impairments: obesity, lymphedema, asthma, chronic obstructive pulmonary disorder (COPD), hypertension, obsessive-compulsive disorder (OCD), personality disorder, and mood disorder.  (R. 20). At Step Three, the ALJ found that Timmons did not have an impairment or combination of impairments that meets or equals the severity of one of the specified impairments in the relevant Listing of Impairments.  (R. 21 - 22).

At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Timmons had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967[,]"[6] with the following limitations: "[T]he claimant would need to alternate sitting and standing about every 30 minutes but would not need to leave the workstation.  She should never operate foot controls; climb ladders, scaffolds, and ropes; kneel; crawl; work at unprotected heights; work around dangerous equipment; work around temperature extremes, humidity and wetness; and be exposed to concentrated environmental pollutants such as dusts, chemicals, and fumes.  She can occasionally climb stairs and ramps, bend, stoop, and crouch.  She must avoid tasks involving a variety of instructions and is able to understand to carry out simple one or two-step instructions and is able to understand to carry out detailed but uninvolved written or oral instructions involving a few concrete variables in or from standardized situations.  She must have minimal changes in work settings and routines, but can make judgments on simple work-related decisions.  She cannot work in crowds and cannot work in contact with the public, and contact with co-workers should be no more than occasional in a well-spaced workstation with no teamwork requirements." (R. 23).

Based on this RFC, the ALJ determined that Timmons was unable to perform

---

[6] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations ... Each classification ... has its own set of criteria."  *Phillips*, 357 F.3d at 1239 n.4.  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the Commissioner] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

any past relevant work.  (R. 27).  At Step Five, the ALJ, after taking testimony from a vocational expert, found that there exist significant numbers of jobs in the national economy that Timmons can perform given her RFC, age, education, and work experience.  (R. 27 – 28).  Thus, the ALJ found that Timmons was not disabled under the Social Security Act.  (R. 28).

Timmons's lone claim of error in favor of reversal is that "[s]ubstantial evidence does not support the ALJ's finding that [Timmons] can perform unskilled work on a consistent basis" because the ALJ "specifically failed to discuss medical records that discuss [Timmons]'s 'inability to get along with people, having various mood swings and paranoia and also "blacking out" and not remembering what happened.' "  (Doc. 13 at 1 – 2).

In analyzing Timmons's mental impairments, the ALJ considered treatment records from Altapointe covering a period from 2011 to January 2014.   The ALJ discussed those records as follows:

> In terms of the claimant's alleged mental impairments, she has received fairly consistent treatment from Altapointe since moving to Alabama. Despite having reported interpersonal conflicts, upon examination she was generally appropriate and cooperative (see Exhibits 1F; 6F; 8F; 10F). Moreover, despite alleging hearing voices and having imaginary friends, she was able to keep appointments and be presentable for those appointments, as well as generally having friends and being able to go out in public.
>
> The claimant's treatment records from Altapointe in 2011 and 2012 show that the claimant was given treatment and medication to control her symptoms (Exhibits 1F; 6F).  Treatment notes from February 2011 show that the claimant reported hearing voices, but that upon examination her mood was normal, her affect was appropriate, her concentration and memory were intact, her judgment was fair, and her anxiety was mild. She was diagnosed with OCD and her GAF score was 65.  In July 2012, treatment notes set forth that the claimant was malingering and/or exaggerating her symptoms in conjunction with her seeking SSI.

Treatment notes in 2012 and 2013 from Altapointe show that the claimant generally had controllable symptoms with medical compliance (Exhibits 6F; 8F; 10F).  In February 2013, the claimant's symptoms had decreased despite her mood and moderate anxiety, and unimpaired concentration and memory.  In July 2013, the claimant had decreased frequency in her hallucinations and upon examination her mood was normal, her affect was appropriate, her memory was unimpaired, despite some concentration impairment (Exhibit 8F).  In August 2013, the claimant despite reporting a recent interpersonal conflict and continuing to hear voices, upon examination she was cooperative, her thoughts were within normal limits, and her concentration and memory was not impaired.  At an examination in December 2013, her mental examination findings were generally within normal limits, despite her moderate anxiety (Exhibit 10F).  Additional treatment notes in January 2014 showed generally normal findings as well (Exhibit 12F).

(R. 25).

Timmons takes issue only with the last two sentences of the above-quoted passage, claiming that their "recitation of the evidence is grossly inaccurate."  (Doc. 13 at 3).  In support, Timmons cites excerpts from two Altapointe treatment notes respectively dated December 30, 2013, and January 2, 2014, which together comprise "Exhibit 12F" (R. 408 – 411).  Having considered those notes, the undersigned is not persuaded that reversible error has been shown.

As Timmons highlights, the December 30, 2013 note, completed by a Dr. Freerksen, states: Timmons "[f]eels 'pissed off.'   Seeing people, objects, shadows.  'I talk to  my friends  everyday.'  These are hallucinations.  Two days ago, she pushed someone down and broke  her nose  because  she got mad. Her friends were telling her to do so."  (R. 410).  Timmons further points out that the December 30, 2013 note documented  the  following  observations: "Appearance/Grooming:  Inappropriate; Behavior:   Uncooperative, Agitated; Mood: Angry; Affect:   Irritable; Homicidal thoughts: Yes, Describe: thoughts of generalized malevolence, not homicide, and   no

intent or plan; Perceptions: Auditory hallucinations present, visual hallucinations present; Insight: Poor Judgement [sic]: Poor; Anxiety: Mild, Describe: fidgety." (R. 410 – 411). However, the undersigned agrees with the Commissioner that these appear to simply be Dr. Freerksen recording Timmons's subjective complaints and offering general observations. Timmons omits Dr. Freersken's additional observations that her thoughts were "logical/coherent/[within normal limits]" and that she had "no impairment" in her concentration. (R. 411). She also fails to mention Dr. Freerksen's observation that "[h]allucinations seem to by [sic] personality based and consumer indicated she assaulted the other person (no charges pressed) because she was angry and not because her 'friends' told her to[,]" indicating Dr. Freerksen had some doubt as to Timmons's subjective reports of hallucinations. (R. 410). Finally, as the Commissioner correctly notes, the December 30, 2013 examination was the only time Dr. Freerksen ever saw Timmons, and her observations as to Timmons's appearance and demeanor are largely inconsistent with prior treatment notes. In particular, Dr. Cohen-Colson, who saw Timmons six times in 2013, repeatedly reported unremarkable observations. Timmons has not challenged the ALJ's characterization of her Altapointe records at any time prior to Dr. Freersken's report.

As for the January 2, 2014 treatment note, completed by therapist J. Smith, Timmons highlights the following observations:

> Consumer presented somewhat agitated today after having to wait longer than expected but gradually calmed down. Consumer reports that she's been "bad" and states that she punched a "friend of a friend" while they were visiting her home a couple of weeks ago…Consumer blamed this behavior on her other "personalities" and stated "Debra punched him." Consumer appears to have a history of living in her "own world" and therapist was able to explore this "world" and it's "Characters" in more detail during today's session.

> Consumer states that she has known "Debra" and "Denies" for a long time
> and that the [sic] "grew up together."  Consumer talked more in depth
> about her childhood at the prompting of therapist.  She discussed her
> behavioral problems that started around the age of 5 and says that she
> created her own world with "friends."
>
> ***It is the clinical opinion of this therapist that consumer created
> her "world" and her "friends" around this age due to trauma and
> abuse.  This has led to consumer not being able to get along with
> people, having various mood swings and paranoia and also
> "blacking out" and not remembering what happened.***

(R. 408 (emphasis by Timmons)).

As the Commissioner correctly notes, a "therapist" who is neither a physician
nor a psychologist is not an "acceptable medical source" who can provide evidence of a
medically determinable impairment.  *See* 20 C.F.R. §§ 404.1513(a), 416.913(a).
Timmons has pointed to no other evidence that would support her claimed impairments
of paranoia or "blacking out."  Moreover, at the time Smith offered his "clinical opinion,"
Timmons had recently been transferred to him from another therapist, and Smith had
only seen her twice (the other time being a month earlier, December 4, 2013) (*see* R. 347
– 348).  Finally, despite the dire-sounding tone of his clinical opinion, Smith's
observations of Timmons at the January 2, 2014 examination were unremarkable.  (*See*
R. 408 – 409 (noting "appropriate" appearance and grooming; "normal, cooperative"
behavior; "normal" mood; affect "appropriate to situation;" no homicidal thoughts; etc.)).

The undersigned is not persuaded that these two treatment notes render the
ALJ's overall longitudinal view of Timmons's Altapointe treatment records fatally
flawed.  Additionally, the undersigned agrees with the Commissioner that Timmons
has not explained how the evidence the ALJ purportedly ignored is inconsistent with
the mental RFC the ALJ ultimately arrived at or otherwise shows that Timmons is

unable to work.  Indeed, the ALJ explained that "[t]he preclusion from working with the public and limitations to occasional interaction with co-workers accommodates her mental impairments and symptoms such as anxiety and issues with interpersonal interactions[, and h]er concentration issues and mental impairments are accommodated by the limitations to simple instructions … and avoiding tasks involving a variety of instructions or tasks."  (R. 25 – 26).[7]  "[C]ontrary to [Timmons]'s contention that the ALJ ignored evidence favorable to [Timmons], 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted). The ALJ's decision in this case was not a broad rejection and was sufficient to enable … this Court to conclude the ALJ considered [the Altapointe treatment notes and Timmons]'s medical condition as a whole." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).[8]

---

[7] The undersigned rejects the Commissioner's assertion that the opinion of nonexamining state agency reviewer Dr. Hinton, which was the only medical opinion in the record and which the ALJ gave "great weight" (R. 26), by itself "constituted substantial evidence supporting the ALJ's findings as to [Timmons]'s mental functional limitations."  (Doc. 14 at 8).  *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) ("The reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision."); *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam) ("The opinions of nonexamining, reviewing physicians … standing alone do not constitute substantial evidence.").

[8] To the extent the ALJ might have misstated portions of the two treatment notes Timmons cites, such factual errors do not warrant remand in this case.  *Cf. Moore*, 405 F.3d at 1213 ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner] ... even if the evidence preponderates against' the decision." (quoting *Bloodsworth*, 703 F.2d at 1239)) (footnote omitted)); *Jacobus v. v. Comm'r of Soc. Sec.*, No. 15-14609,  2016 WL 6080607, at *1 – 2 (11th Cir. Oct. 18, 2016)

Accordingly, the Court **OVERRULES** Timmons's claim of reversible error and finds that the Commissioner's final decision denying her benefits is due to be **AFFIRMED**.[9]

## IV.   Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's February 1, 2016 final decision denying Timmons's applications for a period of disability, DIB, and SSI is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this Order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 17th day of November 2016.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

(per curiam) (unpublished) ("As an initial matter, there are a number of factual errors in the ALJ's opinion … Where an ALJ makes a factual error, the error will be considered harmless if it is clear that the error did not affect the ALJ's ultimate determination. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983).  The ALJ's factual errors are harmless, as substantial evidence supports the ALJ's determination that Jacobus was not entirely credible.").

[9] Generally, claims of error not raised in the district court are deemed waived.  *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 – 16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court … Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it.").